UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------------X
GARDEN CITY BOXING CLUB, INC.,
*as Broadcast Licensee of the September 18, 2004
DeLaHoya/Hopkins, Program*,

                Plaintiff,

    -against-                             **REPORT AND RECOMMENDATION**

FRANCISCO A. RODRIGUEZ, Individually doing
business as ALBERTO RESTAURANT, a/k/a      05-CV-1041 (DGT) (KAM)
HENNESEY RESTAURANT, AND ALBERTO
RESTAURANT, a/k/a HENNESEY RESTAURANT,

                Defendants.
----------------------------------------------------------------------X

**KIYO A. MATSUMOTO, United States Magistrate Judge:**

        By order entered on July 7, 2005, United States District Judge David G. Trager referred this matter, pursuant to 28 U.S.C. § 636(b), to the undersigned magistrate judge for an inquest on damages, following an application by plaintiff for the entry of a default judgment against defendants for alleged violations of 47 U.S.C. §§ 553, 605(a) and 605(e)(4), and a notation of default by the Clerk of the Court entered on June 30, 2005. See Docket No. 9, Order Referring Motion for Report and Recommendation; Docket No. 1, Complaint ("Compl.") ¶ 1; Docket No. 8, Clerk's Notation of Default. Plaintiff's default motion seeks statutory damages of up to $10,000 against each defendant and an enhanced damages award of up to $100,000 against each defendant. Plaintiff also seeks attorneys' fees, costs, interest and a permanent injunction. Defendants have not made any submissions in opposition to plaintiff's motion, despite receiving notice and an opportunity to do so. See Docket No. 6, Certificate of Service dated June 27, 2005.

-1-

For the reasons set forth below, it is respectfully recommended that a default judgment be entered against defendants, jointly and severally, in the amount of $6,650, inclusive of basic and enhanced statutory damages, attorneys' fees of $1,287.50 and costs of $780, for a total award of $8,717.50. It is also respectfully recommended that this amount accrue interest at the rate of nine percent from September 18, 2004 to the entry of judgment, and that the judgment accrue interest at the rate provided by law until paid. Furthermore, it is respectfully recommended that plaintiff's request for a permanent injunction be denied.

## I. BACKGROUND

The Complaint alleges that plaintiff entered into a license agreement to distribute the broadcast of a boxing match between Oscar De La Hoya and Bernard Hopkins ("De La Hoya/Hopkins match" or the "Event"), on September 18, 2004, via closed-circuit television and encrypted satellite signal to commercial establishments for an unspecified licensing fee. See Compl ¶¶ 12-14.[1] The De La Hoya/Hopkins match originated via satellite uplink and was re-transmitted to cable systems and satellite companies via cable signal. Compl. ¶ 12. Plaintiff entered into contracts with various entities within the State of New York which granted them the right to publicly exhibit the Event to their patrons. Id. ¶ 13.

To identify and prosecute commercial establishments which illegally intercepted its broadcast, plaintiff provided investigative agencies with a list of authorized and legal locations which had paid the required fee for exhibition of the De La Hoya/Hopkins match.

---

[1] Plaintiff's Memorandum of Law erroneously refers to the "Barrera/Kelley Boxing Event on April 12, 2003," presumably referring to the Hoya/Hopkins match. See Docket No. 6, Plaintiff's Memorandum of Law ("MOL"), at 5.

Docket No. 6, Affidavit of Joseph Gagliardi, President of Garden City Boxing Club, Inc. ("Gagliardi Aff.") ¶ 5; Affidavit of Craig Carita ("Carita Aff."); List of Authorized Sublicensees. During the broadcast, a team of auditors visited commercial establishments that were not on the list. Gagliardi Aff. ¶ 7.

Although defendants were not authorized to receive the broadcast (Compl. ¶¶ 15-16), the investigator for plaintiff who visited the defendant Alberto Restaurant a/k/a Hennessey Restaurant (the "Establishment"), at 210 Irving Avenue, Brooklyn, New York, on September 18, 2004 at approximately 11:53 p.m., saw the De La Hoya/Hopkins match on "2 television sets[,] . . . 21-25," . . . located behind the counter." Carita Aff. During his presence in the Establishment, the investigator counted, on three separate occasions, 30 "people"[2] in the Establishment, which had a capacity of approximately 50 people.

Plaintiff asserts that the De La Hoya/Hopkins match on September 18, 2004 was not and could not be mistakenly or innocently intercepted by defendants. Gagliardi Aff. ¶ 10;[3] Compl. ¶¶ 15-16. Although defendants' specific method of illegally intercepting the signal for the De La Hoya/Hopkins match is unknown, plaintiff surmises that defendants could have modified a device or utilized equipment used primarily in the assistance of the unauthorized decryption of satellite cable programming. Compl. ¶¶ 15-16, 23; Gagliardi Aff. ¶ 10.

---

[2] The investigator's affidavit stated that he observed approximately 30 "people" in the Establishment but does not clarify how many of those 30 were patrons as opposed to employees.

[3] The paragraph in Gagliardi Aff. numbered ¶ 8 should properly be numbered ¶ 10 and will be referred to as such.

## II. DISCUSSION

A. **Liability**

Federal Rule of Civil Procedure 55(b)(2) provides that when a party moves for judgment against an adverse party in default, a court, in its discretion, may enter judgment against the defaulting party. Plaintiff has made such an application, and the defendants have failed to respond to the Complaint, or otherwise defend against this action or oppose plaintiff's motion for default judgment. Judgment by default is therefore appropriate, and accordingly, it is respectfully recommended that default judgment be entered against defendants in the amount specified below.

A default constitutes an admission of all well-pleaded factual allegations in the complaint, except for those relating to damages. See Greyhound Exhibitgroup, Inc., v. E.L.U.L. Realty Corp., 973 F.2d 155, 158 (2d Cir. 1992). That is, a default judgment that is entered on the well-pleaded allegations in a complaint establishes a defendant's liability (see Bambu Sales, Inc. v. Ozak Trading, Inc., 58 F.3d 849, 854 (2d Cir. 1995)), and the sole remaining issue before the court is whether the plaintiff has provided adequate support for the relief it seeks. Greyhound Exhibitgroup, 973 F.2d at 158.

As noted above, plaintiff's Complaint cites 47 U.S.C. §§ 553 and 605 as bases for relief. While the Court will discuss liability under 47 U.S.C. §§ 553 and 605, it will limit its consideration of damages to 47 U.S.C. § 605 for the reasons stated below.

Section 553(a)(1) provides:

> No person shall intercept or receive or assist in intercepting or receiving any communications service offered over a cable system, unless specifically authorized to do so by a cable operator or as may otherwise be specifically

authorized by law.

Section 605(a) provides in relevant part:

> No person not being authorized by the sender shall intercept any radio communication and divulge or publish the existence, contents, substance, purport, effect, or meaning of such intercepted communication to any person. No person not being entitled thereto shall receive or assist in receiving any interstate or foreign communication by radio and use such communication (or any information therein contained) for his own benefit or for the benefit of another not entitled thereto.

Plaintiff's Complaint appears to establish the elements of liability required to state claims under both § 553(a)(1) and § 605(a). In cases involving broadcasts which are transmitted over the air but are also distributed over a cable system § 605(a) will apply "to the extent reception or interception occurs prior to or not in connection with, distribution of the service over a cable system," while § 553(a) applies to "theft of a service from the point at which it is actually being distributed over a cable system." Int'l Cablevision, Inc. v. Sykes, 997 F.2d 998, 1008 (2d Cir. 1993). Thus, while the Event was conveyed via interstate satellite transmission, plaintiff has alleged that defendants could not have obtained transmission of the Event without performing one of the following illegal acts: (1) using an unauthorized cable decoder known as a "blackbox," (2) purposefully misrepresenting the commercial Establishment as a residential property and thus paying a residential fee for a pay-per-view broadcast, as opposed to the commercial fee charged by plaintiff, or (3) illegally altering the cable service to bring the signal of the Event into the Establishment. See Gagliardi Aff. ¶ 10. To the extent that the defendants stole services at the point that they were distributed via cable, defendants' acts constitute a violation of § 553(a). See Entm't by J&J Inc. v. Mama Zee Rest. & Catering Servs., Inc., No. 01 Civ. 3945, 2002 WL 202522, at *2 (E.D.N.Y. May 21, 2002).

Section 605(a) has been deemed applicable to thefts of cable communications, as long as the cable programming originated as a radio communication. See Int'l Cablevision, Inc. v. Sykes, 75 F.3d 123, 131 & n.5 (2d Cir. 1996). Because plaintiff alleges that the Event was conveyed via interstate satellite transmission (Compl. ¶¶ 12, 15-17), defendants' interception of plaintiff's signal constitutes a violation of 47 U.S.C. § 605(a). See KingVision Pay-Per-View Corp., Ltd. v. Tardes Calenas Moscoro, Inc., No. 01 Civ. 9775, 2004 WL 473306, at *2 (S.D.N.Y. Mar. 12, 2004) (holding that defaulting defendant was liable under 47 U.S.C. § 605, where plaintiff's factual allegations referred to "satellite transmissions, which indicate that the broadcast originated with a radio transmission.").

It is, however, well-settled in the Second Circuit that a plaintiff cannot recover under both § 553(a) and § 605(a). "[W]here a defendant is found to have violated both statutes, the court should award damages pursuant to 47 U.S.C. § 605." Time Warner Cable v. Taco Rapido Rest., 988 F. Supp. 107, 110 (E.D.N.Y. 1997) (citing Sykes, 997 F.2d at 1007). Accordingly, plaintiff's request for damages will be considered only under 47 U.S.C. § 605.

Count II of plaintiff's Complaint also claims relief pursuant to 47 U.S.C. § 605(e)(4), which provides, in relevant part:

> Any person who manufactures, assembles, modifies, imports, exports, sells, or distributes any electronic, mechanical, or other device or equipment, knowing or having reason to know that the device or equipment is primarily of assistance in the unauthorized decryption of satellite cable programming, or direct-to-home satellite services, or is intended for any other activity prohibited by subsection (a) of this section, shall be fined not more than $500,000 for each violation, or imprisoned for not more than 5 years for each violation, or both. For purposes of all penalties and remedies established for violations of this paragraph, the prohibited activity established herein as it applies to each such device shall be deemed a separate violation.

"As several district courts have recognized, 47 U.S.C. § 605(e)(4), which addresses the manufacture, assembly, modification, import, export, sale, and distribution of pirate access devices, is aimed at 'upstream manufacturers and distributors, not the ultimate consumer of pirating devices.'" DirecTV v. Nezak, No. 03 Civ. 918, 2005 WL 1353618, at *2 (D. Conn. May 10, 2005) (quoting DirecTV, Inc. v. Albright, No. 03 Civ. 4603, 2003 WL 22956416, at *2 (E.D. Pa. Dec. 9, 2003)); DirecTV, Inc. v. Borich, No. 03 Civ. 2146, 2004 WL 2359414, at *3 (S.D.W.Va. Sept. 17, 2004); Kingvision Pay-Per-View, Ltd. v. Ruiz, 04 Civ. 6566, 2005 WL 589403, at *1 (S.D.N.Y. Mar. 9, 2005) ("Section 605(e)(4) prohibits the modification of equipment used to assist in the reception of broadcasts and is 'targeted at the distributors of cable interception devices . . . and not at the end-users of such devices.'") (quoting Joe Hand Promotions, Inc. v. Hernandez, No. 03 Civ. 6132, 2004 U.S. Dist. LEXIS 12159, at *3, 11-12 (S.D.N.Y. June 30, 2004)).

Plaintiff merely alleges that defendants violated § 605(e)(4) insofar as their agents or employees "knowingly . . . modified a device or utilized equipment, knowing or having reason to know that the device or equipment is used primarily in the assistance of the unauthorized decryption of satellite cable programming . . . ." Compl. ¶ 23. There is, however, no factual assertion to support a finding that defendants are no more than "ultimate consumers" or "end users" of an illegally modified device, as opposed to "upstream manufacturers and distributors" of such a device, for purposes of liability under § 605(e)(4). Because the Complaint lacks the necessary factual assertions to support a finding of damages under § 605(e)(4), the Court will limit its consideration of damages to violations of 47 U.S.C. § 605(a).

**B.   Damages**

While the allegations of a complaint pertaining to liability are deemed admitted upon entry of a default judgment, allegations relating to damages are not. Chen, 30 F. Supp. 2d at 623. Instead, claims for damages generally may be established in a hearing at which the defendant is afforded the opportunity to contest the amount claimed. See Greyhound Exhibitgroup, 973 F.2d at 158.

Plaintiff seeks an award of statutory damages, and does not seek to establish or recover its actual damages. Defendants have not filed any opposition to plaintiff's submissions, or otherwise responded to plaintiff's allegations or to the relief sought, despite having notice and an opportunity to do so. In this regard, the holding of an inquest by affidavit, without an in-person court hearing, is permitted "as long as [the court has] ensured that there was a basis for the damages specified in the default judgment." Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp., 109 F.3d 105, 111 (2d Cir. 1997) (quoting Fustok v. ContiCommodity Servs., Inc., 873 F.2d 38, 40 (2d Cir. 1989)).

Title 47 U.S.C. § 605(e)(3)(C)(i)(II) allows a party to recover an award of statutory damages "for each violation of subsection (a) . . . involved in the action in a sum of not less than $1,000 or more than $10,000, as the court considers just[.]" In addition, § 605(e)(3)(C)(ii) provides that where "the court finds that the violation was committed willfully and for the purposes of direct or indirect commercial advantage or private financial gain, the court in its discretion may increase the award of damages, whether actual or statutory, by an amount of not more than $100,000 for each violation of subsection (a) . . . ."

While 47 U.S.C. § 605 provides little guidance for assessing damages (see Time

Warner Cable v. Googies Luncheonette, Inc., 77 F. Supp. 2d 485, 489 (S.D.N.Y. 1999); Cablevision Sys. New York City Corp. v. Diaz, No. 01 Civ. 4340, 2002 WL 31045855, at *3 (S.D.N.Y. July 10, 2002)), courts in this circuit have relied upon one of two methods of calculating statutory damages in cases involving the unauthorized receipt and exhibition of pay-per-view events. See Googies Luncheonette, 77 F. Supp. 2d at 489. The first method bases the award on the number of patrons in the establishment who viewed the broadcast. See, e.g., Kingvision Pay-Per-View Ltd. v. Cardona, No. 03 Civ. 3839, 2004 WL 1490024, at *3 (S.D.N.Y. June 30, 2004) ($20 per patron); Taco Rapido Rest., 988 F. Supp. at 111 ($50 per patron); Cablevision Sys. Corp. v. 45 Midland Enter., Inc., 858 F. Supp. 42, 43 (S.D.N.Y. 1994) ($50 per patron). The second method awards a flat sum for each violation. See, e.g., Entm't by J&J, Inc. v. Suriel, 01 Civ. 11460, 2003 WL 1090268, at *1 (S.D.N.Y. Mar. 11, 2003) (awarding $11,000); Kingvision Pay-Per-View Corp., Ltd. v. Papacito Lidia Luncheonette, Inc., 01 Civ. 7575, 2001 WL 1558269, at *2 (S.D.N.Y. Dec. 6, 2001) (awarding $20,000); Kingvision Pay-Per-View, Ltd. v. Jasper Grocery, 152 F. Supp. 2d 438, 442-43 (S.D.N.Y. 2001) (awarding $15,000). In cases where there is uncontradicted evidence of the number of patrons viewing an unauthorized exhibition of a pay-per-view event, courts have used the first approach and multiplied the number of patrons by a set sum, plus any cover charges or other profits attributable to the unauthorized viewing. See Googies Luncheonette, 77 F. Supp. 2d at 489; see also Cardona, 2004 WL 1490224, at *3; Time Warner Cable v. Sanchez, No. 02 Civ. 5855, 2003 WL 21744089, at *4 (S.D.N.Y. July 8, 2003). This is based on the theory that the patrons who watched the unauthorized broadcast would have ordered it individually for residential use. See Googies Luncheonette, 77 F. Supp. 2d at 490.

Here, plaintiff has provided little guidance on which to base a damage calculation. Plaintiff has not submitted evidence from which the actual profits of defendants might be inferred. According to the Carita Affidavit, the Establishment did not impose a cover charge on the night of the broadcast. Plaintiff did not provide evidence regarding the licensing fee that it charged its legitimate commercial customers for authorization to exhibit the Event, or similar boxing matches. There is also no evidence that defendant advertised or otherwise promoted the Event to entice customers into the establishment. "Nevertheless, the availability of unauthorized access to programming reduces demand and depresses the prices that the plaintiff can charge." Garden City Boxing Club, Inc. v. Guzman, No. 03-8776, 2005 WL 1153728, at *3 (S.D.N.Y. Apr. 26, 2005) (citing Cablevision Systems New York City Corp. v. Faschitti, No. 94 Civ. 6830, 1996 WL 48689, at *2 (S.D.N.Y. Feb. 7, 1996)). Accordingly, because plaintiff's investigator's affidavit states that up to 30 people were present during the unauthorized broadcast of the Event on September 18, 2004, and because plaintiff has provided evidence indicating that residential properties are charged $54.95 for authorization to broadcast similar pay-per-view events (see Gagliardi Aff. ¶ 10), it is respectfully recommended that basic statutory damages be assessed on a per-person basis of $55, for an award of $1,650.

Plaintiff further seeks an enhancement of damages for willfulness in the sum of $100,000 pursuant to 47 U.S.C. § 605(e)(3)(C)(ii). Compl. ¶ 20. To receive enhanced damages, plaintiff must prove that defendants' display was willful and for "purposes of direct or indirect commercial advantage or private financial gain." See 47 U.S.C. § 605(e)(3)(C)(ii). Courts typically consider the following factors in determining whether a defendant's conduct calls for enhanced damages: "repeated violations over an extended period of time; substantial unlawful

-10-

monetary gains; significant actual damages to plaintiff; defendant's advertising for the intended broadcast of the event; defendant's charging a cover charge or charging premiums for food and drinks." See Kingvision Pay-Per-View, Ltd. v. Recio, No. 02 Civ. 6583, 2003 WL 21383826, at *5 (S.D.N.Y. June 11, 2003) (citations omitted).

Plaintiff does not allege that defendants advertised or displayed the fight to entice patrons into the Establishment or that patrons went to the Establishment because of its display of the De La Hoya/Hopkins match. As mentioned, plaintiff's evidence indicates that defendants did not impose an admission or cover charge. See Carita Aff. Plaintiff is nonetheless entitled to a further enhancement of the basic damages award because the record demonstrates that defendants affirmatively and willfully engaged in some deliberate act to intercept the De La Hoya/Hopkins match for financial gain. See Gagliardi Aff. ¶ 10.

In circumstances demonstrating such willful violation of 47 U.S.C. § 605(a), it is appropriate to assess enhanced damages in conjunction with basic statutory damages. The Court finds that enhanced damages of $5,000 are appropriate in this case. See Garden City Boxing Club, Inc., v. Guzman, No. 03 Civ. 8776, 2005 WL 1153728, at *3 (S.D.N.Y. Apr. 26, 2005) (where court found defendant's conduct to be "willful and carried out with the purpose of reaping commercial profits[,]" court awarded $5,000 in enhanced statutory damages). Accordingly, it is respectfully recommended that plaintiff be awarded $1,650 in basic statutory damages and $5,000 in enhanced statutory damages, for a total damages award of $6,650.

C.  **Attorneys' Fees and Costs**

Plaintiff's motion requests attorneys' fees in the amount of $1,287.50 and costs in

the amount of $780 from both defendants. See Docket No. 6, Attorney's Affidavit of Costs and Fees ("Attorney Fee Aff.") ¶¶ 2-4[4]. An award of costs, including reasonable attorneys' fees, is mandatory under 47 U.S.C. § 605. See 47 U.S.C. § 605(e)(3)(B)(iii).

In the Second Circuit, a party seeking an attorneys' fees award "must support that request with contemporaneous time records that show, 'for each attorney, the date, the hours expended, and the nature of the work done.'" Diaz, 2002 WL 31045855, at *5 (quoting New York State Ass'n for Retarded Children, Inc. v. Carey, 711 F.2d 1136, 1154 (2d Cir. 1983)). In support of its request, plaintiff's counsel has provided records of work performed litigating the instant action. Plaintiff's counsel's time record reflects an expenditure of 5.5 hours of attorney time at a rate of $200 per hour, and 2.5 hours of paralegal time at a rate of $75 per hour, equaling $1,287.50. See Attorney Fee Aff. ¶ 4. Because these rates are reasonable (see Martas v. Zaro's Bake Shop, Inc., No. 98 Civ. 5895, 2002 WL 1267999, at *6 (E.D.N.Y. Mar. 29, 2002); Wells Fargo Bank v. BrooksAmerica Mortg. Corp., No. 02 Civ. 4467, at *3 (Dec. 1, 2004)), and because the number of hours expended by counsel do not appear excessive, redundant, or otherwise unnecessary (see Hensley v. Eckerhart, 461 U.S. 424, 434 (1983)), it is respectfully recommended that plaintiff be awarded attorneys' fees in the amount of $1,287.50.

Furthermore, the Court has examined plaintiff's request for costs, as well as the documentary evidence that plaintiff has submitted in support of its request, and finds that it has

---

[4] As a preliminary matter, the paragraphs in the Attorney Fee Aff. are misnumbered. In any event, while the Attorney Fee Affidavit at ¶ 3 lists fees in the amount of $1,278.50 and costs in the amount of $780, totaling $2,067.50, plaintiff's Notice of Motion for Default Judgment and Proposed Default Judgment state that plaintiff seeks $1,333.75 in attorneys' fees and costs. Despite this discrepancy, the Court will examine plaintiff's application for fees and costs based on the fees and costs which are itemized in the Attorney Fee Affidavit.

incurred a total of $780 in costs as follows: $250 in court filing fees, $180 in process server fees for service on both defendants, and investigative expenses of $350. See Docket No. 6, Invoices from Signal Auditing, Inc., dated November 17, 2004 and December 17, 2004. Accordingly, it is respectfully recommended that plaintiff be awarded costs in the total amount of $780. See Guzman, 2005 WL 1153728, at *3 (awarding court filing fee, process server fees, and investigative expenses).

### D. Liability of Individual Defendant

Plaintiff's Complaint names both Francisco A. Rodriguez ("Rodriguez") and the Establishment as defendants. Rodriguez is an officer, director, shareholder and/or principal of the defendant Establishment, Hennessey Restaurant. See Compl. ¶¶ 7-10. To establish a contributory violation of 47 U.S.C. § 605(a), plaintiff must show that Rodriguez "authorized" the violations set forth in the Complaint. See Kingvision Pay-Per-View Ltd. v. Olivares, No. 02 Civ. 6588, 2004 WL 744226, at *5 (S.D.N.Y. Apr. 5, 2004) (quoting Softel Inc. v. Dragon Med. & Sci. Communications, 118 F.3d 955, 971 (2d Cir. 1997)). "To establish vicarious liability, . . . [plaintiff] must show that . . . [individual defendant] had a 'right and ability to supervise' the infringing activities and had an obvious and direct financial interest in the exploitation of [the] copyrighted materials." Id. (quoting Softel, 118 F.3d at 971).

The undisputed allegations in the Complaint and plaintiff's submissions in support of the default judgment motion established the requisite control and financial interest for defendant Rodriguez, and therefore, the Court finds that Rodriguez is jointly and severally liable for violations of 47 U.S.C. § 605(a), as discussed above. Accordingly, it is respectfully

recommended that plaintiff's award be limited to a single recovery against both defendants, jointly and severally.

E. **Interest**

Plaintiff also requests interest (Compl. ¶ 21), but fails to specify the applicable rate. When, as here, a federal statute is silent with respect to a prejudgment interest rate, the "'common practice' among courts within the Second Circuit is to grant interest at a rate of 9%, the rate of prejudgment interest under New York State law." Service Employees Int'l. Union, Local 32BJ, AFL-CIO v. Stone Park Assoc., LLC, 326 F. Supp. 2d 550 (S.D.N.Y. 2004) (citing N.Y. C.P.L.R. §§ 5001-5004 (McKinney 1992)). Accordingly, because 47 U.S.C. § 605 is silent with respect to a prejudgment interest rate, it is respectfully recommended that plaintiff be awarded prejudgment interest at the rate of nine percent from September 18, 2004, the date of the unauthorized exhibition of the Event, to the date of entry of judgment in this action. See Recio, 2003 WL 21383826, at *6 (awarding nine percent interest rate from date of unauthorized showing of boxing match); Ruiz, 2005 WL 589403, at *2; see also N.Y. C.P.L.R § 5004 (McKinney 1992).

Furthermore, post-judgment interest is available in civil judgments entered in federal court from the date of the judgment until paid. See 28 U.S.C. § 1961. Accordingly, it is respectfully recommended that post-judgment interest be awarded at the rate provided by law.

F. **Permanent Injunction**

Plaintiff also seeks permanent injunctive relief against the defendants pursuant to 47 U.S.C. § 605(e)(3)(B)(i). The Court "may issue an injunction on a motion for default

recommended that plaintiff's award be limited to a single recovery against both defendants, jointly and severally.

E. **Interest**

Plaintiff also requests interest (Compl. ¶ 21), but fails to specify the applicable rate. When, as here, a federal statute is silent with respect to a prejudgment interest rate, the "'common practice' among courts within the Second Circuit is to grant interest at a rate of 9%, the rate of prejudgment interest under New York State law." Service Employees Int'l. Union, Local 32BJ, AFL-CIO v. Stone Park Assoc., LLC, 326 F. Supp. 2d 550 (S.D.N.Y. 2004) (citing N.Y. C.P.L.R. §§ 5001-5004 (McKinney 1992)). Accordingly, because 47 U.S.C. § 605 is silent with respect to a prejudgment interest rate, it is respectfully recommended that plaintiff be awarded prejudgment interest at the rate of nine percent from September 18, 2004, the date of the unauthorized exhibition of the Event, to the date of entry of judgment in this action. See Recio, 2003 WL 21383826, at *6 (awarding nine percent interest rate from date of unauthorized showing of boxing match); Ruiz, 2005 WL 589403, at *2; see also N.Y. C.P.L.R § 5004 (McKinney 1992).

Furthermore, post-judgment interest is available in civil judgments entered in federal court from the date of the judgment until paid. See 28 U.S.C. § 1961. Accordingly, it is respectfully recommended that post-judgment interest be awarded at the rate provided by law.

F. **Permanent Injunction**

Plaintiff also seeks permanent injunctive relief against the defendants pursuant to 47 U.S.C. § 605(e)(3)(B)(i). The Court "may issue an injunction on a motion for default

judgment provided that the moving party shows that (1) it is entitled to injunctive relief under the applicable statute and (2) it meets the prerequisites for the issuance of an injunction." Cablevision of Southern Conn. v. Smith, 141 F. Supp. 2d 277, 287-88 (D. Conn. 2001). The first condition is met in this case because injunctions are remedies available under 47 U.S.C. § 605(e)(3)(B)(i). Nevertheless, the Second Circuit has cautioned that "injunctive relief does not follow automatically upon a finding of statutory violation . . . ." Town of Huntington v. Marsh, 859 F.2d 1134, 1143 (2d Cir. 1988).

Plaintiff must also show irreparable harm and the absence of an adequate remedy at law in order to obtain a permanent injunction. See Rondeau v. Mosinee Paper Corp., 422 U.S. 49, 57 (1975); New York State Nat'l Org. for Women v. Terry, 886 F.2d 1339, 1362 (2d Cir. 1989). To satisfy the irreparable harm requirement, a party seeking injunctive relief ordinarily "must show that the injury it will suffer is likely and imminent, not remote or speculative, and that such injury is not capable of being fully remedied by money damages." NAACP v. Town of E. Haven, 70 F.3d 219, 224 (2d Cir. 1995) (citations omitted).

In this case, plaintiff has not made an adequate showing that it will likely suffer any imminent irreparable harm absent an injunction against defendants. The Court has found no evidence that the defendants would continue to harm plaintiff through violations of 47 U.S.C. § 605, and is satisfied that basic and enhanced statutory monetary damages provide adequate remedies in the event that defendants commit similar violations in the future. See, e.g., Main Events/Monitor Productions v. Batista, No. 96 Civ. 5089, 1998 WL 760330, at *1 (E.D.N.Y. Aug. 26, 1998) (injunctive relief denied when plaintiff failed to show that its remedy at law was inadequate and that it will suffer irreparable harm). Accordingly, because there is no evidence

that the violations are continuing or that the statutory damages are insufficient to deter future conduct, it is respectfully recommended that plaintiff's request for a permanent injunction be denied.

## III. CONCLUSION

For the foregoing reasons, it is respectfully recommended that a default judgment be entered against defendants, jointly and severally, in the amount of $6,650, inclusive of basic and enhanced statutory damages, attorneys' fees of $1,287.50 and costs of $780, for a total award of $8,717.50. It is also respectfully recommended that this amount accrue interest at the rate of nine percent from September 18, 2004 to the entry of judgment, and that after the entry of judgment, the judgment accrue interest at the rate provided by law until paid. Furthermore, it is respectfully recommended that plaintiff's request for a permanent injunction be denied.

Plaintiff is directed to serve a copy of this Report and Recommendation on defendants immediately upon receipt, and to file an affidavit demonstrating service of the same. Any objections to this Report and Recommendation must be filed with United States District Judge David G. Trager within ten days of the date of entry of this Report and Recommendation. Failure to object within ten days of the date of entry will preclude appellate review by the District Court. See Local Civil Rule 6.3; Frank v. Johnson, 968 F.2d 298, 300 (2d Cir. 1992); see also Fed. R. Civ. P. 72(a) ("Within 10 days after being served with a copy of the magistrate judge's order, a party may serve and file objections to the order; a party may not thereafter assign as error a defect in the magistrate judge's order to which objection was not timely made."). Any requests for extensions of time to file objections should be made to Judge Trager.

**SO ORDERED**
Dated: September 28, 2005
    Brooklyn, New York

                                                    /s/
                                       **Kiyo A. Matsumoto**
                                       United States Magistrate Judge
                                       Eastern District of New York

**SERVICE LIST:**

GARDEN CITY BOXING CLUB, INC. *(via ECF)*
FRANCISCO A. RODRIGUEZ *(via overnight mail)*
ALBERTO RESTAURANT a/k/a HENNESEY RESTAURANT *(via overnight mail)*